1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KYLE LEE PAYMENT,

                              Plaintiff,

        v.

RON FRAKER, DARREN HEAWARD,
BRIAN PEDERSON, ROY CORTEZ,

                              Defendants.

No. C13-5547 BHS/KLS

**REPORT AND RECOMMENDATION
NOTED FOR:  March 27, 2015**

        Before the Court is defendants' Motion for Summary Judgment.  Dkt. 31.  Plaintiff filed a

response.  Dkt. 34.  The undersigned recommends granting defendants' motion in part and

denying defendants' motion in part.

**BACKGROUND**

**A.      Summary of Claims**

        Plaintiff is a mentally ill inmate who has spent most of his life in some form of

segregation or isolation housing.  Dkt. 34-2 p. 3 ¶ 4 (Psychological evaluation).  He names as

defendants Ron Fraker, the Superintendent of the Clallam Bay Corrections Center, (CBCC),

Darren Heaward, a Hearings Officer at CBCC, and Intensive Management Unit Correctional

REPORT AND RECOMMENDATION - 1

Officers Brain Pederson and Roy Cortez.  Dkt. 5 pp. 8-9.  Plaintiff alleges that defendants Pederson and Cortez retaliated against him for his filing of grievances against them by issuing a false infraction report and false incident report in violation of his First Amendment Rights.  Dkt. 5, p. 11.  Plaintiff claims that defendant Heaward did not provide him with proper due process for his disciplinary hearing, in violation of his Fourteenth Amendment rights, and that Defendant Heaward violated his Eighth Amendment rights by not taking into account Plaintiff's mental health when sanctioning him to 10 days of isolation.  Mr. Payment alleges that defendant Fraker also violated his Fourteenth Amendment rights by not reviewing his appeal before affirming the finding of guilt and that defendant Fraker violated his Eighth Amendment rights by not reversing the sanction or taking plaintiff's mental health into account when upholding the ten day isolation sanction.  Dkt. 5, pp. 14-15

### B.    Facts

On February 9, 2011 Defendant Pederson issued Plaintiff a serious infraction for threatening Pederson and for intimidating behavior.  Dkt. 5, p. 11, Dkt 31-1, p. 50.  In the Initial Serious Infraction Report Officer Pederson states that while he was serving lunch Mr. Payment asked to talk to him.  Mr. Payment was housed in the Intensive Management at that time.  In response to Officer Pederson's question as to what Mr. Payment wanted, Mr. Payment said:  "if you want a fight, open the door and lets fight!" "you don't need to hide behind a door, one click my cuffs and it is on!"  *Id*.  Officer Pederson also noted that Mr. Payment "assaulted a staff member at WCC by slipping the wrist restraints when they were loosely applied."  *Id*.

Officer Cortez prepared an Incident Report on February 9, 2011 in which he noted the following:  "As C/O Pederson approached I/M Payment's door, I/M Payment stated to C/O Pederson, 'I want to stop this cell banging, so open this door so we can fight.'  I/M Payment also

stated, 'why don't you one click my handcuffs so we can get it on.'" Dkt. 31-1, p. 51.  Mr. Payment denies making any threats against Officer Pederson and denies that he attempted to intimidate either Officer Pederson or Officer Cortez.  Dkt. 34-1, p. 4.

Mr. Payment alleges that the serious infraction was written by Officer Pederson in retaliation for Mr. Payment filing grievances against both Officer Pederson and Officer Cortez.  Mr. Payment filed an "emergency grievance" against Officer Cortez on January 27, 2011 (Dkt. 34-1, p. 16) and a second "emergency grievance" against Officers Pederson and Cortez on February 8, 2011.  Dkt. 34-1, p. 15.  Mr. Payment testified that both officers were aware of his filing these grievances based on Mr. Payment's experience with the grievance process.  As stated in his declaration, Mr. Payment is knowledgeable about the grievance process as he has "personally used the process, both regular and emergency, over 200 times.  I have also read the grievance program manual and policy.  When an inmate files an emergency grievance, the staff processing the grievance, tells the officer involved that the grievance has been filed, the allegations and asks the officer to confirm or deny its accuracy."  Dkt. 34-1, p. 3.

Mr. Payment testified that following his filing of his February 8, 2011 emergency grievance that he was threatened by both Officer Pederson and Officer Cortez.  Officer Pederson told Mr. Payment that Mr. Payment was going to "pay for that."  Officer Cortez told Mr. Payment that "we are going to bury your ass in isolation."  Dkt. 34-1, p. 3.

Additionally, Mr. Payment testified to statements made by Officer Pederson sometime in 2012 in which Officer Pederson, in the presence of another unidentified correctional officer, discussed the cell search that formed the basis of Mr. Payment's January 31, 2011 grievance regarding staff misconduct.  Dkt. 34-1, p. 13.  According to Mr. Payment, Officer Pederson

REPORT AND RECOMMENDATION - 3

admitted that the infraction about the cuffs was a "bogus infraction" for Mr. Payment's grievances about the cell searches.  Dkt. 34-1, p. 4.

On February 15, 2011, nine days before the first scheduled hearing which was subsequently continued, Officer Kettel served plaintiff with a Disciplinary Hearing Notice that identified the charges and advised Mr. Payment of his rights.  Dkt. 31-1, p. 53.  Mr. Payment requested both a statement and witness testimony from offender Eliason.  *Id*.

DOC Policy 460.000 (Dkt. 31-1, p. 8 – 21) contains the Department's written policy regarding the disciplinary process for prisons.  Section VI. G of the policy, which sets forth the procedure to be followed when conducting a disciplinary hearing, provides that an offender who is charged with a serious infraction will be present at the hearing unless "their behavior disrupts the hearing" or "an offender refuses to attend his/her scheduled hearing."  Dkt. 31-1, p. 14.

On the date of the rescheduled hearing, February 24, 2011, Officers Pederson and Kettel completed a "Disciplinary Hearing – Offender Refusal/Waiver of Attendance" form, which was provided to the Hearings Officer, Defendant Heaward.  In the form the officers noted that Mr. Payment refused to attend the scheduled hearing as he was "non compliant during the escort process for the hearing."

Mr. Payment denies that he was non compliant.  Rather, he testified in his declaration that on February 24, 2011 he was taken to the shower for a strip search because Officer Pederson thought that Mr. Payment had contraband on his person.  "I was told I was not going to my hearing because hearings wasn't[sic] going to be waiting around.  At that point Defendant Pederson yelled out 'tell hearings they can go, Payment isn't going.'"  Dkt. 34.-1, p. 4.

There are no facts presented to support an inference that Defendant Heaward, who served as the Hearings Officer, knew any details of Mr. Payment's alleged "refusal" to attend the

REPORT AND RECOMMENDATION - 4

hearing.  Defendant Heaward made the determination to continue with the hearing in Mr. Payment's absence "as he was non-compliant during escort process for the hearing … continued due to facility lockdowns and hearing officer unavailability." Dkt. 31-1, p. 54.  In his declaration Defendant Heaward elaborated on his reasons for not transporting Mr. Payment which included the facts that (1) the hearing had been continued due to facility lockdowns, (2) Mr. Heaward's availability to conduct the hearing, (3) Mr. Payment's behavior that lead to his not being available to attend the hearing, and (4) the fact that offender movement within the IMU could result in a potentially hazardous situation. Dkt. 31-1, p. 5.

As previously noted, Mr. Payment requested a statement from offender Eliason and he also requested Eliason testify at the hearing.  According to Defendant Heaward, if witness testimony is requested then a written statement is not obtained.  Dkt. 31-1, p. 4. ¶ 4.  If witness testimony is requested, the offender "will bring questions to the hearing to be reviewed by the hearings officer for relevancy then the questions that are relevant be responded to by the staff or offender." Dkt. 31-1, p. 4.  While this procedure is not included in DOC Policy 460.000, it is included in WAC 137-28-300 which sets for the procedure to be followed when conducting a disciplinary hearing within the Department of Corrections.  In particular, WAC 137-28-300 (5) provides as follows:  "The hearing officer has the authority to question all witnesses.  The inmate may submit proposed questions to be asked of witnesses, but the hearing officer has discretion over the questions asked."  As noted by Mr. Payment, the WAC provides an inmate with an opportunity to provide a list of questions.  It is not a mandatory requirement.  The authority to ask questions and to decide which questions to ask always remains with the hearing officer.

If a witness requested by the offender does not testify at the hearing, the hearings officer is required, both by DOC Policy 460.000 (G)(4) and WAC 137-28-300(6)(c), to document on the

written record the reasons for denial of in-person testimony that is requested in writing by the inmate.

Defendant Heaward documented his reasons for not allowing testimony from offender Eliason as being:  "Denied in person testimony due to the high probability of a potentially hazardous situation occurring in the offender's current housing assignment, which is in the intensive management unit."  Dkt. 31-1, p. 54 (Serious Infraction Report, Fact Finding During Hearing).  In his declaration, however, Defendant Heaward also testified that the reason no testimony was obtained from offender Eliason was because Mr. Payment did not present questions for his proposed witness so there was nothing to obtain from offender Eliason.  Dkt. 31-1, p. 5.

Mr. Payment asserts that Defendant Heaward has a blanket unwritten policy of not allowing inmate witnesses to be present at disciplinary hearings conducted in the IMU.  In support of this contention he relies on Defendant Heaward's answer to Interrogatory No. 2 in which Defendant Heaward stated:  "I have not allowed inmate witnesses to be present at hearings in the IMU."  Dkt. 34-3, p. 11.  This statement, alone, is not sufficient to support the inference of a blanket policy as asserted by Mr. Payment, particularly in light of the valid reason given by Defendant Heaward as to why the Plaintiff witness did not testify at the hearing.

Defendant Heaward found Mr. Payment guilty and imposed 90 days loss of good time and 10 days isolation.  He also noted that this was Mr. Payment's fifth violation for threatening another within twelve months.  Dkt. 31-1, p. 54.

Mr. Payment filed an appeal with defendant Fraker, the Superintendent of CBCC, who summarized plaintiff's appeal as follows: "Your due process rights were violated, this is

REPORT AND RECOMMENDATION - 6

retaliation and the sanction is too severe." Dkt. 31-1, p. 55.  Defendant Fraker upheld the finding

of guilt and the sanction on March 24, 2011.  *Id.*

Mr. Payment filed a Personal Restraint Petition with the Court of Appeals in which he

challenged the infractions.  The Attorney General agreed to expunge the sanctions and the 90

days good time has been restored to Mr. Payment.  Dkt. 5, p. 14.  He already served the 10 days

in isolation.

Mr. Payment alleges that his Eighth Amendment right was violated by Defendants

Heaward and Fraker.  He bases this claim on the fact that he has serious mental health issues and

that a punishment of ten days in isolation exacerbates that illness, a fact which he asserts was

known by Defendants Heaward and Fraker.   He specifically alleges that his Eight Amendment

right was violated by Defendant Heaward's failure to consider Mr. Payment's mental health and

what effect isolation would have on his condition.  He asserts that Defendant Fraker violated his

Eight Amendment rights when he failed to properly consider Mr. Payment's appeal.  Defendant

Heaward testified that he knows Mr. Payment through the disciplinary process and he had no

reason to believe his mental health condition would be exacerbated by isolation.  Dkt. 31-1, p. 6.

Plaintiff submitted a May 31, 2011 unsworn psychological evaluation report prepared by

Dr. Anthony Eusanio to "assess potential for diminished capacity" in a state criminal case.  Dkt.

34-1, p. 2.  In his report, Dr. Eusanio opines that plaintiff has a mental disorder that is affected by

the effects of long term isolation and may cause plaintiff to act out.  Dkt. 34-22, pp. 34 – 37.  He

does not, however, state that the underlying mental condition is made worse by isolation.  He

also noted that the plaintiff has been in some form of isolation for 95% of the last 14 years.  *Id.*

This report was prepared after February 2011 and therefore was not available to either Defendant

Heaward at the time of the disciplinary hearing or Defendant Fraker at the time he considered

Mr. Payment's appeal.  Defendants submitted an August 4, 2014 declaration of Dr. Davidson, a licensed psychologist, who concludes that Mr. Payment may have increased his "maladaptive behaviors in response to the sanction for 10 days," but his mental condition was not exacerbated by 10 days of isolation.  Dkt. 31-2, p. 3.

Mr. Payment also asserts that Defendant Fraker violated Mr. Payment's due process rights when Defendant Fraker failed to properly consider his appeal of the disciplinary hearing. In that regard he alleges that Defendant Fraker did not read Mr. Payment's appeal but rather relied on the conclusions of a designee.  DOC Policy 460.000 (L) specifically allows a Superintendent or designee to "conduct a review of all hearings and dispositions to ensure conformity with policy and WAC 137-28."  Dkt. 31-1, p. 19. The undersigned notes, however, that Defendant Fraker admitted that he personally considered plaintiff's appeal.  Dkt. 34-3, p. 3.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law.  Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co*., 68 F.3d 1216, 1221 (9th Cir.1995).  Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from

which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

To state a claim under 42 U.S.C. §1983, at least two elements must be met: (1) the defendant must be a person acting under color of state law, (2) and his conduct must have deprived the plaintiff of rights, privileges or immunities secured by the constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981). Implicit in the second element is a third element of causation. *See Mt. Healthy City School Dist Bd. of Educ. v. Doyle*, 429 U.S. 274, 286-87 (1977); *Flores v. Pierce*, 617 F.2d 1386, 1390-91 (9th Cir. 1980), *cert. denied*, 449 U.S. 875 (1980).

To state a claim under 42 U.S.C. § 1983, a plaintiff must also set forth the specific factual basis upon which he claims each defendant is liable. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In order to obtain relief against a defendant under 42 U.S.C. § 1983, a plaintiff must prove the particular defendant has caused or personally participated in causing the deprivation of a particular protected constitutional right. *Arnold v. International Business Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (1977). To be liable for "causing" the deprivation of a constitutional right, the particular defendant must commit an affirmative act, or omit to perform an act, that he or she is legally required to do, which causes the plaintiff's deprivation. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *see also Rizzo v. Goode*, 423 U.S. 362, 370-71, 375-77 (1976). Sweeping conclusory allegations against an official are insufficient to state a claim for relief. The plaintiff must set forth specific facts

showing a causal connection between each defendant's actions and the harm allegedly suffered by plaintiff.  *Aldabe*, 616 F.2d at 1092; *Rizzo*, 423 U.S. at 371.

**DISCUSSION**

Defendants present five issues in their Motion for Summary.

1.      Whether Plaintiff has a stated a valid First Amendment claim?
2.      Whether the Plaintiff has shown a Due Process violation?
3.      Whether Plaintiff has stated a valid Eighth Amendment claim?
4.      Whether the Plaintiff has alleged the personal participation of Defendant Fraker?
5.      Whether the Defendants are entitled to qualified immunity?

Dkt. 31, p. 6.

A.      First Amendment - Defendants Pederson and Cortez.

When a prisoner alleges a First Amendment claim of retaliation under § 1983, he must prove five elements: (1) that he was subjected to adverse action; (2) the adverse action was imposed because of certain conduct; (3) the conduct that gave rise to the adverse action is legally protected; (4) the adverse action chilled the prisoner's speech; and (5) the adverse action did not advance a legitimate penological goal.  *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). In addition, the prisoner must show that the retaliation was the substantial or motivating factor behind the conduct of the prison official.  *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 285-87 (1977); *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009).  Because claims of retaliation are easy for inmates to allege, courts examine such claims with skepticism to avoid becoming embroiled in the day-to-day operations of prisons.  *See Canell v. Multnomah County*, 141 F. Supp. 2d 1046, 1059 (D. Or. 2001) (*quoting Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)).  Courts review prisoner retaliation claims in light of the United States Supreme Court's "disapproval of excessive judicial involvement in day-to-day prison management."  *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (*citing Sandin v. Conner*, 515 U.S. 472, 482 (1995)).

REPORT AND RECOMMENDATION - 10

1    Reviewing the facts in the light most favorable to Mr. Payment, the undersigned

2    concludes that Mr. Payment has raised material issues of facts with regard to his First

3    Amendment retaliation claim.

4    Mr. Payment presented uncontradicted testimony that both Defendants Pederson and

5    Cortez were aware of Mr. Payment filing emergency grievances against them and that following

6    the filing of the grievances he was threatened by both defendants.  In addition, Officer Pederson

7    admitted to Mr. Payment that the infraction about the cuffs was a "bogus infraction" in response

8    to Mr. Payment's grievances about the cell searches.  The law is clear that the filing of prison

9    grievances is protected speech.  *Hines v. Gomez*, 108 F.3d 265, 269 (9thCir. 1997) (finding a

10   false charge or infraction for the filing of grievances states a claim of retaliation).  With these

11   summary judgment facts, the issuance of the infraction is the type of action that "would chill or

12   silence a person of ordinary firmness from future First Amendment activities."  *Brodheim v. Cry*,

13   584 F.3d 1262, 1271 (9th Cir. 2009) *quoting Mendocino Enviro. Center v. Mendocin Cty.*, 192

14   F.3d 1283, 1300 (9th Cir. 1999)(emphasis in original).  Even though Mr. Payment is very

15   familiar with the grievance system and has utilized it numerous times, the objective standard

16   governs the "chilling inquiry."  This Court cannot conclude, as a matter of law, and based on the

17   record before it, that Mr. Payment has failed to meet this objective standard.  A reasonable

18   person may have been chilled by the issuance of the infraction.

19   The final element on which Mr. Payment must prevail requires him to show that the

20   challenged infraction "did not advance a legitimate penological goal."  *Rhodes* at p. 567.  In light

21   of the fact that there are material issues of fact regarding whether Defendants Pederson and

22   Cortez retaliated against Mr. Payment, an issue of fact also exists as to whether the infraction

REPORT AND RECOMMENDATION - 11

advanced a legitimate penological goal.  If the infraction were written solely in retaliation for Mr. Payment's exercise of his protected speech, then there can be no legitimate penological goal.

Mr. Payment has raised material issues of fact regarding the motivation of Defendants Pederson and Cortez that survive Defendants' summary judgment motion and the undersigned recommends Defendants' motion as to this claim be DENIED.

B.    Due Process in a prison disciplinary hearing.

The Due Process clause of the Fourteenth Amendment provides that no person shall be deprived of life, liberty or property without due process of law.  In analyzing a procedural due process claim, a court must first determine whether the claimant has been deprived of a liberty or property interest that is protected by the Constitution;  if so, then the Court must determine whether the procedures attendant upon that deprivation were constitutionally sufficient. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454 (1989).  Due process at a minimum requires notice and an opportunity to be heard.  *Procunier v. Martinez*, 416 U.S. 396 (1974).

In a prison context, where length of incarceration and loss of good time are implicated, a prisoner is entitled to the following:

1. Written notice of the violation no less than 24 hours before the hearing.
2. An opportunity to present witnesses and evidence if doing so will not endanger the orderly operation of the facility.
3. Written statements by the factfinder as to the evidence relied on and the reason for the disciplinary action.

*Wolff v. McDonnell*, 418 U.S. 539, 540 (1974).  Here, it is uncontested that plaintiff received proper advance written notice and that he received written findings setting forth the evidence relied on by defendant Heaward.

Plaintiff contends that Defendant Heaward violated his right to attend the hearing and to present witness testimony.  An inmate's right to attend a hearing and present evidence on his

1  behalf is not absolute.  Prison officials may refuse to allow an inmate to attend a hearing if they

2  have a valid penological reason for their actions.  *Koenig v. Vannelli*, 971 F.2d 422, 423 (9th

3  Cir.1992) (per curiam) ("When prison officials limit an inmate's efforts to defend himself, they

4  must have a legitimate penological reason.").

5      Heaward contends that the officers told him that Plaintiff did not comply with escort

6  procedures and therefore the Plaintiff was not allowed to attend his disciplinary hearing.  Thus,

7  as a result of his own actions, Mr. Payment was not available to present his defense.  Dkt. 31-1 p.

8  5 ¶ 8.  The Ninth Circuit has approved granting summary judgment on a due process claim where

9  prison officials did not take an inmate to his disciplinary hearing because the inmate refused to

10  comply with the escort procedures.  *Cox v. Clark*, 321 Fed. Appx. 673, 676 (9th Cir. 2009)

11  (finding a valid penological reason for the inmates absence where the inmate refused to position

12  himself for leg restraints).

13      Plaintiff contends that on February 24, 2011, Officer Pederson took him to the shower for

14  a strip search and then told him he was not going to the hearing.  Dkt. 34-1 p. 4 ¶ 11.  Plaintiff

15  states that he complied with the Officers requests.  However, Plaintiff does not contest the fact

16  that Officers Pederson and Kettel submitted the appropriate form to Defendant Heaward stating

17  that Plaintiff was non-compliant, nor does he present any evidence that Mr. Heaward knew of

18  any other reason for Mr. Payment's non-compliance.  Plaintiff presents no evidence showing that

19  Defendant Heaward acted improperly in conducting the hearing without plaintiff being present.

20      Mr. Payment also asserted that his due process rights were violated when Mr. Heaward

21  failed to call Plaintiff's inmate witness.  Initially Mr. Heaward noted he "[d]enied in person

22  testimony due to the high probability of a potentially hazardous situation occurring in the

23  offender's current housing assignment, which is in the intensive management unit."  Dkt. 31-1,

REPORT AND RECOMMENDATION - 13

p. 54.  However, in support of this motion for summary judgment, Mr. Heaward noted that the witness was not called due to the lack of written questions for the witness from Mr. Payment. Dkt. 31-1, p. 5.  With no proposed questions by Mr. Payment, the transport of the requested witness to the hearing would have served no purpose and would have had associated with it the additional hazard of transport as noted by Defendant Heaward.

Defendant Heaward had a legitimate reason for not having the witness present at the hearing.  Accordingly, the undersigned recommends that Defendants' motion regarding Mr. Payment's due process claim be GRANTED.

C.       Eighth Amendment.

Plaintiff alleges that Defendant Heaward showed deliberate indifference to his mental health when Heaward sanctioned him to ten days of isolation which Mr. Payment says "exacerbates" his mental illness.  Dkt. 5, p. 15 ¶34.  Plaintiff also alleges that Defendant Fraker was deliberately indifferent when he refused to reverse the sanction on appeal.  Dkt. 5, p. 15 ¶35.

An inmate alleging Eighth Amendment violations based on prison conditions must demonstrate that prison officials were deliberately indifferent to the inmate's health or safety by subjecting him to a substantial risk of serious harm.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995).  Prison officials display a deliberate indifference to an inmate's well-being when they consciously disregard an excessive risk of harm to the inmate's health or safety.  *Farmer*, 511 U.S. at 838-40; *Wallis*, 70 F.3d at 1077.  The Eighth Amendment standard requires proof of both an objective and a subjective component.  *Hudson v. McMillian*, 503 U.S. 1 (1992).  If either of these components is not established, the court need not inquire as to the existence of the other.  *Helling v. McKinney*, 509 U.S. 25, 35 (1993).

REPORT AND RECOMMENDATION - 14

First, the deprivation alleged must objectively be sufficiently serious, resulting in a denial of the "minimal civilized measures of life's necessities." *Farmer*, 511 U.S. at 834 (*quoting Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  In proving the objective component, an inmate must establish that there was both some degree of actual or potential injury, and that society considers the acts that the plaintiff complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to those acts.  *Helling*, 509 U.S. at 36; *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976).

Second, the subjective component requires that the prison official possess a sufficiently culpable state of mind; that is, "deliberate indifference to inmate health and safety."  *Farmer*, 511 U.S. at 834-36.  With regard to deliberate indifference, a prison official is not liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.  The subjective component requires proof that the official was: (1) aware of the facts that would lead a reasonable person to infer the substantial risk of serious harm; (2) actually made the inference that the substantial risk of serious harm to the plaintiff existed; and (3) knowingly disregarded the risk.  *Id.*; *see also Farmer*, 511 U.S. at 844.

Plaintiff has presented no evidence to show that either Defendant Heaward or Fraker harbored an improper state of mind that could constitute deliberate indifference.  Neither the report of Dr. Eusanio nor the affidavit of Dr. Davison existed in February of 2011, when Defendant Heaward imposed the ten days of segregation, or in March of 2011, when Defendant Fraker signed the appeal.  Dkt. 31-1, pp, 54-55, (hearing and appeal), Dkt. 34-2, p. 2, (date of Dr.

REPORT AND RECOMMENDATION - 15

Eusanio's report, May 31, 2011), Dkt. 31-2 p. 3, (date of Dr. Davison's affidavit, August 4, 2014).

Hearings officer Heaward states that he knew Mr. Payment from prior hearings and had no reason to believe plaintiff's mental condition would be exacerbated by isolation.  Dkt. 31-1, p. 6.  Plaintiff presents no evidence to refute Defendant Heaward's testimony.  Further, Plaintiff presents no evidence showing that Defendant Fraker had any reason to believe that the isolation sanction should be overturned.  The undersigned recommends that Defendants' motion regarding Plaintiff's Eighth Amendment claims be GRANTED.

D.      Personal participation.

Defendants argue that Defendant Fraker should be dismissed for lack of personal participation.  A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of a supervisory responsibility or position.  *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 n.58 (1978).  Thus, the theory of *respondeat superior* is not sufficient to state a claim in a civil rights action.  *Padway v. Palches*, 665 F.2d 965, 968 (9th Cir. 1982).

Personal participation is connected to causation.  The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts and omissions are alleged to have caused a constitutional violation.  *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

Plaintiff must allege facts showing how each defendant caused or personally participated in causing the harm alleged in the complaint.  *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).   A § 1983 action cannot be based on vicarious liability alone, but must allege that defendant's own conduct violated plaintiff's civil rights.  *City of Canton v. Harris*, 489 U.S. 378, 385-90 (1989).

REPORT AND RECOMMENDATION - 16

Defendant Fraker denied plaintiff's disciplinary appeal.  Dkt. 31-1, p. 55.  However, there is no liberty interest in any appeals process in connection with disciplinary proceedings.  *Moncla v. Kelley*, 430 Fed. Appx. 714, 718 (10th Cir, 2011).  In fact there is no right to an appeal process for prison administrative decisions or grievances. *See Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.1988); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996); *accord Wolff v. McDonnell*, 418 U.S. 539, 565, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (accepting Nebraska system wherein no provision made for administrative review of disciplinary decisions).  Accordingly the undersigned recommends that Defendant Fraker's motion as to this issue be GRANTED.

E.      Qualified Immunity.

Under the doctrine of qualified immunity, prison officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Prison officials are protected by qualified immunity unless they violate clearly established law of which a reasonable person would have known.  *Id.*  The qualified immunity standard is a generous one.  Qualified immunity "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Hunter v Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  Because day-to-day decisions of prison officials are accorded deference by the courts under the principles espoused in *Bell v. Wolfish*, 441 U.S. 520 (1979), these officials are entitled to a corresponding accommodation if a reasonable error in judgment is made.  "This accommodation . . . exists because 'officials should not err always on the side of caution' because they fear being sued." *Hunter*, 502 U.S. at 228.

REPORT AND RECOMMENDATION - 17

A civil rights plaintiff opposing a claim of qualified immunity must establish the existence of a constitutional violation, clearly established law to support the claim, and that no reasonable official could believe their conduct was lawful.  *Pearson v. Callahan*, 555 U.S. 223 (2009); *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Siegert v. Gilley*, 500 U.S. 226, 232 (1991). The test for qualified immunity is an objective test and a defendant is entitled to qualified immunity if he could objectively have believed his actions were constitutional.  *See Act Up!/Portland v. Bagley*, 988 F.2d 868, 871 (9th Cir. 1993); *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

The law is clearly established regarding due process at a prison disciplinary hearing and the law is clearly established regarding plaintiff's First Amendment retaliation claim.  The appropriate legal standards were set forth in the body of this Report and Recommendation. *Supra* pp. 12-15.

Defendants Pederson and Cortez are not entitled to qualified immunity because their state of mind is at issue.  The law regarding retaliation is well established and if the officers falsely infracted plaintiff because of his grievances against them, then they would not be entitled to qualified immunity.  On the other hand if they wrote the serious infraction because of plaintiff's conduct they do not need qualified immunity because their actions would be constitutional.  "If a genuine issue of fact exists preventing a determination of qualified immunity at summary judgment, the case must proceed to trial."  *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993).

The undersigned does not address defendants' qualified immunity arguments on issues where the undersigned recommends granting summary judgment.  Where there is no constitutional violation the Defendants do not need the protection of qualified immunity.

REPORT AND RECOMMENDATION - 18

**CONCLUSION**

The undersigned recommends denial of Defendants Pederson and Cortez's motion for summary judgment on plaintiff's First Amendment retaliation claim.  The undersigned recommends granting defendants Heaward and Fraker's motion for summary judgment on all remaining claims as Plaintiff has failed to show they violated his constitutional rights.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **March 27, 2015**, as noted in the caption.

**DATED** this 4th day of March, 2015.

Karen L. Strombom
United States Magistrate Judge